**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3604
_____

J&J SPORTS PRODUCTIONS, INC.,
                                        Appellant

v.

DANIEL RAMSEY,
a/k/a DANIEL SMITH RAMSEY,
d/b/a TREAURES BANQUET HALL;
TREASURES 5549, LLC, AN UNKNOWN BUSINESS ENTITY,
d/b/a TREASURES BANQUET HALL
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 2-17-cv-1942)
District Judge: Honorable Mark A. Kearney
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 2, 2018
_____

Before: SHWARTZ, ROTH, and FISHER, <u>Circuit Judges</u>.

(Filed: December 11, 2018)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

Plaintiff J&J Sports Productions, Inc. ("J&J") appeals the District Court's orders denying its motions for default judgment against Defendant Daniel Ramsey and to alter or amend that judgment. Because the Court did not abuse its discretion in denying these motions, we will affirm.

I

J&J had the exclusive licensing rights to broadcast the May 2, 2015 boxing match between Floyd Mayweather and Manny Pacquiao and the accompanying undercard matches occurring at the MGM Grand Garden Arena in Las Vegas, Nevada. J&J distributes sporting event programming by entering into agreements with commercial entities for limited sublicensing rights. J&J did not enter into such an agreement with either Defendants Treasures 5549, LLC, or Ramsey.

Treasures 5549 owns and operates Treasures Banquet Hall (the "Banquet Hall") in Philadelphia, Pennsylvania. Using his personal email address and own name, Ramsey applied for and held amusement and commercial activity licenses from the City of Philadelphia Department of Licenses & Inspections for Treasures 5549.

The Banquet Hall advertised on Facebook that it would broadcast the fight and provide drink specials and free food. On fight night, the Banquet Hall admitted over 200 patrons, each paying a $20 entrance fee, and broadcasted J&J's licensed program.

J&J filed a complaint against Defendants in the United States District Court for the Eastern District of Pennsylvania, alleging violations of 47 U.S.C. §§ 553 and 605 for the unauthorized broadcast of J&J's licensed program. Defendants were served with the

2

complaint but did not respond.  As a result, J&J requested and the Clerk of the Court entered default against them.  J&J then sought the entry of default judgment, and the District Court held a hearing.  The Court entered default judgment for J&J against Treasures 5549, awarding $20,674.11 in damages under 47 U.S.C. § 605(e)(3)(C)(i) and attorney's fees and costs because "no one, including Treasures 5549, LLC, paid J&J for the right to show the May 2, 2015 pay-per-view telecast."  J&J Sports Prods., Inc. v. Ramsey, Civ. No. 17-1942, 2017 WL 4287200, at *2, *4 (E.D. Pa. Sept. 27, 2017).  As to Ramsey, the Court found that "J&J adduced no evidence of Mr. Ramsey ordering the telecast, advertising the telecast or his presence in the Treasures Banquet Hall for the showing," and that the evidence it produced concerning his association with Treasures 5549 was insufficient to establish individual liability.  Id. at *4.

J&J moved to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e), which the District Court denied.  The Court held that J&J failed to meet the standard required for such a motion and said that, contrary to J&J's argument, the Court had not required proof of actual knowledge to hold Ramsey individually liable. The Court also held that the amusement and business licenses on which J&J relied "do not reflect Mr. Ramsey's official capacity," or include "allegations of an officer role," and thus do not establish "Ramsey's right and ability to supervise paired with a direct financial benefit."  App. 5.

J&J appeals.

3

II[1]

A

We review orders granting or denying default judgment motions and Rule 59(e) motions to alter or amend judgment for abuse of discretion. Jorden v. Nat'l Guard Bureau, 877 F.2d 245, 250-51 (3d Cir. 1989) (citations omitted) (default judgment); Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 272 (3d Cir. 2001) (Rule 59(e) motion). An abuse of discretion occurs "as a result of an errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact." McDowell v. Phila. Hous. Auth., 423 F.3d 233, 238 (3d Cir. 2005) (citing Chiang v. Veneman, 385 F.3d 256, 264 (3d Cir. 2004)).

B

J&J argues that the District Court erred in denying its request for default judgment against Ramsey and its motion to alter or amend that judgment because it wrongly applied a heightened standard for individual liability. J&J also argues that the Court erred in finding insufficient evidence upon which to hold Ramsey individually liable for commercial piracy because the business documents in his name establish control over the Banquet Hall's employees and activities and direct financial benefit in its increased profits.

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Before granting default judgment, a district court may consider whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Broadcast Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd., 555 F. Supp. 2d 537, 541 (E.D. Pa. 2008) (citations omitted); see 10A Charles Alan Wright, Arthur R. Miller, et al., Federal Practice & Procedure § 2685 (4th ed. 2018).[2]

J&J claims Ramsey is liable for violating the commercial piracy statutes, 47 U.S.C. §§ 553 and 605.[3] The Communications Act, § 605, holds any person or individual liable for the unauthorized interception and publication of airborne satellite cable transmissions for non-private viewing. 47 U.S.C. § 605(a), (b), (d)(1); TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (3d Cir. 2001). Similarly, under the Cable Act, § 553, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so." 47 U.S.C. § 553(a)(1).

---

[2] In addition, "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

[3] Because courts have adopted the same test for personal liability under both statutes, we need not differentiate between personal liability under §§ 553 or 605. See, e.g., J&J Sports Prods., Inc. v. Crazy Willy's Bar, Lounge & Rest., Inc., No. 17-CV-1192, 2018 WL 3629595, at *3 (E.D.N.Y. July 31, 2018); J&J Sports Prods., Inc. v. BOB Lounge, LLC, No. 17-11350, 2018 WL 300362, at *4 (E.D. Mich. Jan. 5, 2018); Joe Hand Promotions, Inc. v. Bush, SA-16-CA-174-FB, 2017 WL 7052329, at *2 (W.D. Tex. Oct. 27, 2017); J&J Sports Prods., Inc. v. Ribeiro, 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008).

A plaintiff must satisfy three elements to establish a defendant's liability under these statutes: (1) interception of a satellite transmission or broadcast, (2) lack of authorization, and (3) publication. See 47 U.S.C. §§ 553(a), 605(a). Here, J&J seeks to impose liability on both Treasures 5549 and an individual associated with Treasures 5549. To hold such an individual liable, J&J must prove that the individual:

> (1) has the right and ability to supervise the violative activity, although he need not actually be supervising, because he need not know of the violative activity, and (2) has a direct financial interest in the violation, i.e., financial benefits, even if not proportional or precisely calculable, that directly flow from the violative activity.

Joe Hand Promotions, Inc. v. Yakubets, 3 F. Supp. 3d 261, 296 (E.D. Pa. 2014) (adopting test for individual vicarious liability under the Copyright Act set forth in Softel, Inc. v. Dragon Medical & Scientific Communications, Inc., 118 F.3d 955, 971 (2d Cir. 1997)); see also Joe Hand Promotions, Inc. v. Tickle, No. 4:12-cv-01874, 2016 WL 393797, at *13 (E.D. Pa. Feb. 2, 2016) (applying Yakubets test); J&J Sports Prods., Inc. v. Chauca, Civ. No. 14-6891, 2015 WL 7568389, at *5 (E.D. Pa. Nov. 25, 2015) (same). Thus, individual liability under § 553 "does not require actual knowledge or supervision." J&J Sports Prods., Inc. v. Cruz, Civ. No. 14-2496, 2015 WL 2376290, at *4 (E.D. Pa. May 18, 2015).

Here, the District Court applied the test described above, did not require proof of actual knowledge, and correctly concluded that J&J did not adduce facts to impose individual liability on Ramsey. Ramsey, 2017 WL 4287200, at *2, *4 (citing Cruz, 2015 WL 2376051, at *5 (citing Yakubets, 3 F. Supp. 3d at 277)); see also App. 4 (reiterating Yakubets test in the order denying Plaintiff's motion to alter or amend judgment)). First,

6

although J&J alleged in its complaint that "Ramsey is a managing member of Treasures 5549, LLC," App. 85, and presented a document showing that Treasures is an LLC, Ramsey's name is not on that document,[4] and there is no evidence or allegation that he has an ownership interest in Treasures 5549. In any event, an ownership interest or right in an LLC as a managing member alone is insufficient to establish liability. See Joe Hand Promotions, Inc. v. Murray, No. 5:15-cv-5631, 2016 WL 3903205, at *4-5 (E.D. Pa. July 18, 2016) (holding that an individual could not be found liable where plaintiff alleged only that she was a managing member of the LLC that owned and operated the pirating business). Second, the fact that Ramsey applied for and received the amusement and business licenses is insufficient to show he had the right to control or supervise the activities at the Banquet Hall. See Yakubets, 3 F. Supp. 3d at 297, 300, 301 (holding liquor license was sufficient to establish individual liability where it identified the individual as the president, secretary/treasurer, director, stockholder, and manager/steward of the pirating business). Here, Ramsey's name merely appears on these licenses, and there is nothing in the record to show the licenses imposed any particular obligations on him. Contra Tickle, 2016 WL 393797, at *13 (holding liquor license sufficient to establish individual liability where individual was registrant on the

---

[4] In its default judgment opinion, the District Court asserted, without citation, that Ramsey also filed the LLC registration papers for Treasures 5549. Ramsey, 2017 WL 4287200, at *1. J&J repeated this statement in its briefs, citing the Court's opinion. See Appellant's Br. at 14; Dkt. No. 34-1 at 4. There is no support in the record for this assertion. J&J has provided only the Pennsylvania Business Entity Filing History for Treasures 5549, which does not list Ramsey's name, and alleged in the unverified complaint only that "Ramsey is a managing member of Treasures 5549, LLC," App. 85.

7

license and the license obligated him to supervise the activities of the business).  Third, as the District Court noted, J&J relies predominately on its allegations in the complaint made on information and belief.  These allegations are distinguishable from the factually-supported statements on which the Cruz court relied where the defendant answered the complaint, admitting that she was once the legal operator of the pirating business and the business entity filing history explicitly listed her as an officer.  2015 WL 2376290, at *4.

Thus, given the lack of evidence to show Ramsey had the right and ability to supervise activities at Treasures 5549 and the Banquet Hall, the District Court properly concluded that Ramsey cannot be held individually liable for the piracy violations.  Therefore, it did not abuse its discretion in denying default judgment as to Ramsey.

C

We reach the same conclusion concerning the District Court's order denying J&J's motion to alter or amend the default judgment.  Pursuant to Rule 59(e), three circumstances warrant altering or amending a judgment: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).  Because none of these circumstances is met and the District Court correctly declined to find Ramsey individually liable, there was no reason for it to alter or amend its ruling denying J&J's motion for default judgment against Ramsey.

## III

For the foregoing reasons, we will affirm.